The next matter on our calendar is City of Long Beach v. Total Gas & Power, North America. Good morning, Your Honors. Good morning. My name is Solomon Serra. I'm appearing here on behalf of the Palant City of Long Beach plaintiff in the antitrust action below. Your Honors, this case, the facts of which have previously been before this Court in the Harry decision, involves a complex scheme to manipulate a market for the trading of gas that was purchased by my client. We're here on a de novo review where all the inferences are to be drawn in the plaintiff's favor, the plausibility is to be examined, and the right to relief has to be simply beyond the speculative level. We think we've easily met those tests in this case. Not only do we have this case, but there's the pending Federal Energy Regulatory Commission proceeding, which has been going on for several years, and which very recently, since the close of briefing in this case, has resulted in an order from FERC allowing the matter to proceed to trial before an administrative law judge later in 2022. Now, FERC is proceeding under the Federal Power Act, and there's no private right of action under that act, so there's no compensation that can be obtained through the FERC proceeding. Based on the action pending before this Court, this is the only action in which participants in this market have any possibility of seeking redress for the unlawful trading and activities that occurred here. So within two years, they could have – the Commodities and Exchange Act provides a cause of action for manipulation, right, or am I wrong about that? It does, Your Honor, but we chose not to pursue that claim. We believe the monopolization claim that we're pursuing under Section 2 is the more appropriate claim. Of course, the Commodities and Exchange Act claim was addressed in the Harry decision. The Court there found that the plaintiff didn't trade in the appropriate market. Here we have Long Beach definitely trading in a market that was – if you have – if you're able to manipulate a market, that's the equivalent of monopolistic power under Section 2 of the Sherman Act. Isn't that quite a statement by this Court? Your Honor, it's certainly supported by precedent because what the conduct involved here is and the issue that was raised and really is challenged here, which is on page 45 of Judge Kaplan's 55-page order, is whether there was anti-competitive conduct here within the meaning of the antitrust laws. Price manipulation is an evil that is always prohibited by the antitrust laws. The Second Circuit precedent makes that clear. And we think this fits within the monopolization claim for the reason that the defendants, Total and related entities, injected uneconomic trades into this market that moved the market. They obtained – What was the anti-competitive injury? What was the anti-competitive effect of that? Well, the injury, Your Honor, was the purchase of gas by Long Beach at super-competitive prices as a result of the manipulation engaged in by Total. But there was no competitor, was there? Well, Your Honor, what happened here is – no, Long Beach is certainly not a competitor of Total, but Total's conduct eliminated the opportunity for competitors to enter this market by injecting the super-competitive prices that they did through – Was there any evidence that anyone wanted to enter this market and couldn't? Well, Your Honor, they couldn't because of the activity of the defendant. Now, I can't really answer that at this point in time. And certainly, if the issue was whether or not we could provide additional evidence of parties being – But there was no allegation of a competitor to Total Gas? There's – Your Honor, there's no – Was there? There's no specific identification of a competitor that's identified in that claim. Is there anything about the sine qua non of a Section 2 claim that there is a competitor who is being forced out of the business by the anti-competitive behavior of the defendant here? It is not, Your Honor. It is not the sine qua non. I would respectfully disagree with that. All right. Tell me why not. It is one way, certainly, that you can show anti-competitive conduct, but it does not depend, Your Honor, on the existence of an exclusion. What it depends on is whether the activities, uneconomic activities, setting up proprietary trades to benefit their own positions, whether or not that distorted the market such that the plaintiff was forced to pay super-competitive prices. And a competitor couldn't enter. That's your argument, that there was no competitor because they couldn't enter the market because of the pricing? Your Honor, it impaired the ability and dissuaded, if you will, competitors for entering the market, Your Honor. But that's not the only test, Your Honor, because if you obtain control over prices through engaging in uneconomic trades, we believe under the case law that that is sufficient to establish a Section 2 claim. And, indeed, if there is no ability to do so. Is that the same thing as saying that every successful market manipulator is also a monopolist? That's inherent in your argument, right? Your Honor, I don't think so because the key is the ability to control price. If their activity rises to the level. That's also successful in — that's also inherent in the concept of a successful manipulator, right, is that they've succeeded in pushing the price away from what the normal forces of supply and demand would otherwise dictate. And you're saying everybody who does that, even if they do it by posting one spoofed order, is by definition a Section 2 monopolist by virtue of that success. Your Honor, it would depend on the specific facts of the case. But with respect to this market where the underlying conduct allowed them to move price. But that's true of a lot of markets. That would make a pump-and-dump scheme, someone who's able to effectuate a pump-and-dump scheme, a monopolist under your theory, right? They're artificially moving stock prices. They're a monopolist, right? Well, Your Honor, I think that would probably fall under the rubric of the federal securities law as opposed to the antitrust law. We're focused here on — Exactly. That's my point is we have the Commodities and Exchange Act for manipulation. You're trying to fit it into the Sherman Act under a very broad theory of monopolistic power that I don't think any court, certainly no circuit court — I know this is a Marquette decision, but no circuit court has ever adopted this view. Well, Your Honor, you're correct that the Merced decision, the Merced v. Barclays decision precisely adopted the theory that we're presenting here. And it was based on Second Circuit precedent, Portdoc, Adderall, Top Hat, these cases that discuss the power to move price and obtaining that control through uneconomic trades that exclude competition. And, Your Honor, although we haven't identified a specific other participant in the market who would have been present here, and perhaps we could have had we given the opportunity — But Judge Kaplan thought that was dispositive on the issue of whether you could bring a Your Honor, we've generally alleged in the complaint that there was an exclusion of competition. We have not identified another competitor who could have presented itself, but certainly we were thrown out on the first motion. We didn't know what the courts could view. Couldn't an argument also be made that even if you could allege that, that they would be the more efficient enforcer under Section 2 to bring such a claim? If there were competitors who were affected by any competitive conduct, why would we need better situated than your clients to make such a claim? Well, Your Honor, I don't think there are any better situated clients here, and I think our client is an efficient enforcer. First of all, the Long Beach was directly impacted by paying super competitive prices from the conduct we've alleged. It is possible that there is a more directly injured participant, but that's not dispositive under the test that's applied to the efficient enforcer analysis. We're seeking to represent all those who were injured by this conduct and the conduct that distorted the market. And the efficient enforcer analysis doesn't work against us either because the damages analysis will not be speculative. Cook has worked up in their extensive work on this case a specific analysis of the trades. It's very complex. It's a complex market, certainly. Expert witness testimony would allow us to do that. So there's no threat of disproportionate liability here whatsoever to the defendant's total from this claim. I think we easily meet the efficient enforcer test. And I also believe that we've established antitrust injury because anticompetitive conduct is conduct without a legitimate business purpose that makes sense only because it eliminates competition. And I don't think there's any case that requires us, albeit we probably could do it had we be given leave to amend, to identify who may have entered this market to take on Total's distorting trades. But the fact and the allegation is that because of those distorting trades, because it gave market power to Total, to their proprietary trades, which they lost money on Can I just ask you a very quick question about the California unfair competition law? Yes. So Judge Kaplan held that in order to recoup money under that law, the plaintiff has to show that the defendant is holding money traceable back to the plaintiff's losses. And am I right that you don't cite a case in the history of the California unfair competition law that constitutes the exception from that rule where there is no traceability from plaintiff's losses to defendant's gains? Your Honor, I think that's fair. But I would add this. There's been a development in the law within the Ninth Circuit and in general with regard to Section 17200, which is that there's an appellate decision called Sonner, S-O-N-N-E-R, which has found that if you have an adequate remedy of law, you cannot pursue relief under the equitable statute of the 17200 statute. So if this case were remanded, Your Honor, we would likely not pursue, and I can say here in open court that if we were sent back down with a reversal or leave to attempt to replete even, we would not replete that cause of action in light of that decision. Okay. Thank you, Counsel. You've reserved some time for rebuttal. Yes, thank you. Two minutes. We'll hear from Total Gas. Please. May it please the Court, David DeBold appearing on behalf of the appellants. The plaintiff here is clearly trying to disguise a Commodity Exchange Act manipulation claim in Section 2, Monopolization Clothing, and Judge Kaplan correctly explained why that doesn't work. So you don't deny that you were manipulating, though. In fact, you paid a fine of $3.6 million to the CFTC, and the FERC is still considering your manipulation, correct? Your Honor, we raised a number of reasons why their manipulation claims are also invalid as far as we know. But you don't deny that you were manipulating, do you? We do deny we were manipulating. Okay, then explain that to me. Because I think we all think there was manipulation. The problem with the plaintiff's case, as we've discussed, is that there didn't seem to be a competitor. But everyone seems to agree that you were manipulating the prices so that you made money in other areas. That's wrong? Well, what Judge Kaplan said is he didn't need to reach out other arguments for why they have failed to state a claim, for why what happened here was, in fact, price manipulation. What he held was, even if I grant them that they have plausibly alleged that price manipulation is what is going on here, this is not a Section 2 monopolization claim. So you say we were bad guys, but you didn't find the right law to sue us. He said, even if you were bad guys, is I think the way I sort of slightly disagree with your characterization, Judge Kula. The CFTC settlement was basically for litigation costs, and there was no admission of any wrongdoing. So you paid $3.6 million? Yes. And you did just for the fun of it? You didn't admit anything? It would have costed more than that to litigate those claims, Your Honor. And on the FERC side, where we stand is that we have a staff report, basically a prosecution memo by the CFTC Office of Enforcement Staff saying, we think we can prove these allegations. And FERC said, okay, we're going to have a hearing to see if you can prove that this conduct violated the Natural Gas Act. But there is no private right of action under the Natural Gas Act, which is why we don't have that claim in front of us. There's a Commodities Exchange Act cause of action available to people who claim price manipulation. They have to prove the various elements of price manipulation under that act. But the plaintiff here waited almost four years after this investigation became public, and the Commodities Exchange Act has a two-year limitations period. That's why we're here. They want you to excuse them for not bringing a Commodities Act claim, which, to be clear, we would vigorously defend against that allegation. But they want you to take a Commodities Exchange Act type of claim and call it a Section 2 monopolization claim because that has a longer limitations period and also has trouble damages. So you don't – this is where we started. You don't deny the manipulation. You just say they brought suit under the wrong act. We say that you don't need to reach the other claim – the other arguments that Judge Kaplan didn't reach, in which we dispute that they have plausibly alleged even manipulation because even if they had, this is not a Section 2. Even if they had. Even if they had. Even if they did do it, they brought suit under the wrong act. All right. Thanks. I understand that now. They rely heavily on the Merced decision. You just think that was wrongly – it's not really distinguishable. Well, we do think it was wrongly decided, and so did Judge Kaplan. And he went through the monopolization analysis that that opinion does not even address. The other thing to keep in mind about the Merced decision – well, two other things. One is it had both Section 1 and Section 2 claims. Section 1 is a restraint of trade, which can be violated by a conspiracy to fix prices. And Judge Kaplan clearly said in his opinion if they had Section 1 available – in other words, if there could have been a conspiracy here – we would be having a different conversation because in cases like Galboam, this Court's case that Judge Kaplan referred to, the Court found that that is a per se violation of the antitrust laws, and somebody could claim they were injured by prices that were affected by a conspiracy to restrain trade under Section 1. So although Section 2 was alleged in Merced, the judge's decision there did not really address it separate from Section 1. The other difference is that in that case, the plaintiff alleged that the market was encumbered in the sense that it restricted supply that was available for others to purchase or sell. Now, the plaintiff here says, well, we allege that too, but if you look at their complaint, it is nowhere in there. And the reason it's nowhere in there is that FERC, which is making these allegations as we just talked about, does not claim that this alleged scheme in any way restricted the supply. In fact, if you look at the months that they're complaining about, the plaintiff here is complaining about, they're saying that our client bought gas at a higher price than it really needed to. If anything, that would motivate an increase in supply. It's just the opposite of what anybody would expect from a monopolization claim. I think there's nothing wrong with manipulating prices and the company made money because everyone got what they wanted. You made money. The plaintiffs got gas. Right? Nothing wrong with the system. Nothing to see here. That's not our argument, Your Honor. Our argument is, and Judge Kaplan said the same thing, if you believe they could prove what they allege as the conclusory allegation of what happened here, if you believe they could prove that, there's a different law for them to be bringing this case under, not Section 2 of the Antitrust Act. And since they have abandoned the UCLL claim here at oral argument, there is nothing for Your Honors to see here. So the people that worked for Total Gas, there were at least two whistleblowers in the last several years, knew what you were doing and told the government, told those two agencies about it, didn't they? That's what the plaintiff alleges, yes. Well, is that true or not? I mean, it's public record. It's going to be litigated in front of FERC, Your Honor, and we have a number of defendants. You don't deny that there were whistleblowers, do you? I'm sorry? You don't deny that there were whistleblowers? Well, they call themselves whistleblowers. It depends on whether what they reported is actually accurate. If you go back and look at the order that set this for a hearing. The people that whistleblew to the CFTC prevailed and you paid a penalty of $3.6 million. Your Honor, they didn't prevail. We settled that matter with a neither admit nor deny order and paid what was essentially less than what it would have cost to litigate that matter. And it's far less, by the way. So it was a nuisance, a nuisance thing that you paid to get rid of. Yes, Your Honor. But, you know, the question here, if I can come back to it, is whether or not this plaintiff bringing a claim under the antitrust laws and specifically Section 2 has stated a claim. And for the reasons we have said in our brief and we've argued here, they simply are bringing a claim under a statute that does not apply to the conduct. And they're asking this Court to broaden the definition of what a monopoly power and a monopolization claim is to make up for their deficiencies and not bringing a claim under a different statute where they wouldn't have had to prove an effect from monopolization. Thank you. If there are no other questions, we ask the Court to affirm. Thank you. Mr. Serra. Thank you, Your Honor. Your Honor, there's many, Your Honors, there's many Section 2 claims where it's alleged that an entity has monopolized a market and the participants in that market, purchasers of the product, have paid super competitive prices. This really is no different than that. In fact, the conduct of Total here was to remove supply from the market, which directly affected Long Beach and other participants in that market. But did they remove supply? Yes, Your Honor, they did. By manipulating prices? Opposing counsel says it increased supply. Well, Your Honor, that's a factual dispute. That's what discovery is about in cases like this. But our complaint alleges that supply was removed, and that's one element. Did the FERC report make such conclusions or not? Your Honor, I can't speak to the, I think it was about a 200-page recent order, and I'm not certain that it may or may not be in there. But I know what's in our complaint, and our complaint that's at issue here clearly says that supply was removed from the market, that Total exercised control over price, drove up the price, disallowed other participants from engaging in the normal exercise and forces of supply and demand, and caused Long Beach to pay super competitive prices. This is not a situation where it's one or the other. You have a Commodity Exchange Act claim or an antitrust claim. If this claim is gone, essentially the participants in this market have no avenue for relief, Your Honor. And we believe that this does fall neatly within the Second Circuit precedent with respect to monopolization claims. You don't need to be a competitor. Which case are you relying on? Port Dock would be one, Your Honor. You don't need to be a competitor to state the claim. There's numerous claims that are — No, but there has to be a competitor in the market. Well, if an entity controls price and knocks out others who would otherwise have been participants in the market, that's what we've alleged. If it's required to name the competitor who has been removed from the market, Your Honor, we weren't given that opportunity. But you may not have to name the specific competitor, but you have to allege plausibly how the supply that would otherwise have materialized was driven out. And it is a common sense and basic economic principle that as the price goes up, people are induced to sell. And that would have the effect, under just basic microeconomics, of increasing supply, not decreasing it. Right? It would, Your Honor. But the allegations of our complaint — and this is a very complex market that, Your Honor, Judge Pooler, you've written about. It's not as straightforward a market as going out and buying a product at a furniture store. It's highly complex. It involves multiple participants. And we believe that looking at the plausibility standard that applies here, if you read our complaint in its totality, we show that there was an exclusion of competition, there was an ability to move price, defendants destroyed the competitive setting of what would otherwise be fair market prices by their conduct. You don't have to name any competitor, but tell me the type of institution or industry or business that would ideally, in your scenario, be a competitor. What kind of person? What kind of business? Well, Total is a huge multinational oil and gas concern. There are many of those, including smaller ones in the United States, including hedge funds in the United States that regularly participate in markets like this. There's a huge panoply. So they raise the price to consumers, Total. That's the allegation. Ultimately, yes. The super competitive price. Yes. So why wouldn't a competitor come in and say, hey, these prices are good, we want to supply as well? Well, Your Honor, this is a particularized market you've written about that involves the bid week, the index price exchanges. There could have been players that entered this market, but when they're looking at what's reported in Platts and NGI as to the prices, they would make a decision, they're too high, we're not going to join the fray. The reason they would do that. Because of the potential and actual manipulation, is what you're saying. Yes, exactly. That keeps people out. Because what I learned in macroeconomics is that when the price goes high, that's when a competitor comes in under the peak, right? Your Honor, in a sort of, yes. From a macroeconomic sense, big picture, yes. In this very arcane, complex world of trading, gas futures, swaps, derivatives, it's not quite as straightforward, but I think a fair reading of our complaint, Your Honor, gets us beyond the plausibility stage here, because we have talked about exclusion of competition, we have talked about control of price, and we have shown that there's been actual damage to Long Beach and similar situated participants. Absent us having a chance to explore this through discovery or even an amendment to try and correct the errors that were identified by Judge Kaplan, that's the end of the ballgame. They will have gotten away with their misconduct. Thank you very much, counsel. Thank you both for a very good argument.